UNITED STATES *v.* BORDER BROKERAGE Co. (No. 5031)[1]

---

[1] C.A.D. 754.

United States Court of Customs and Patent Appeals, Nov. 17, 1960

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Alan S. Rosenthal* and *Ronald A. Jacks*, trial attorneys, of counsel) for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad*, of counsel) for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

WORLEY, Chief Judge, delivered the opinion of the court:

Whether Congress intended to allow free duty for certain paper bag containers imported from Canada, filled with fertilizer, closed, and returned to Canada, is the basic issue here.

The collector classified the merchandise under paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, T.D. 52373 and T.D. 52462, which reads:

Manufactures of paper, or of which paper is the component material of chief value, not specially provided for * * *_____  17½% ad val.

Upon appeal, however, the Customs Court, C.D. 2131, sustained the importer's protest and held that the containers were entitled to free entry under the provisions of Section 308(1) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, which reads:

Sec. 308: Temporary Free Importation Under Bond For Exportation

The following articles, when not imported for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty, under bond for their exportation within six months from the date of importation, which period may, in the discretion of the Secretary of the Treasury (whether such articles are imported before or after this section becomes effective), be extended, upon application, for a further period not to exceed six months:

(1) Articles to be repaired, altered, or otherwise changed in condition by processes which do not result in articles manufactured or produced in the United States; * * *

The parties agree that the importation is in chief value of paper and was properly classified and assessed under paragraph 1413 unless it is eligible for free entry under Section 308(1); and that processes to which the containers are subjected "do not result in articles manufactured or produced in the United States."

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

Two types of bags, imported from Canada in 1957, were imported empty, filled with fertilizer, sealed, and returned to Canada. One type, described as "openmouth," after filling, was folded across the top and run through a sewing machine which stitched it closed; the other type has an inverted folded sleeve at one corner of the bottom which functions as a valve. The bag is filled by inserting a spout in the sleeve through which fertilizer is blown. Upon removal of the spout the weight of the contents closes the bag.

The Customs Court was of the opinion that

If an article is imported with an intent to subject it to a change in condition, and a change actually occurs, the statute is satisfied, notwithstanding the fact that the change is a mere incident to another primary object, as here, the obtaining of domestic fertilizer.

In taking issue with that conclusion the Government argues that the bags are not so "changed in condition" as to establish a free entry status under the provisions of Section 308(1), alleging that if the instant operation *per se* effects a "change in condition" then the same reasoning would allow virtually every container imported for filling and exportation free entry under Section 308(1); and that such a result would be contrary to the legislative intent as reflected by the legislative history regarding containers.

To support that position the Government outlines the tariff developments regarding containers up to and including the present act. It points out that under the Revised Statutes of 1875, Section 2504, various containers were designated as dutiable merchandise and that those not specifically provided for were assessed under Section 2807 at a rate applicable to their contents, the only specific exceptions being to exempt from duty American containers exported with American products and returned empty. The Government then asserts that such basis for assessing duties on containers did not change over the years, except that the specific designations and lists of dutiable containers were enlarged as evidenced by those sections relating to containers in the earlier acts.[3] The Government then shows that the Tariff Act of 1930, as amended, imposes duties on both filled and empty containers except for certain express exemptions, viz.: Paragraph 1615(b), exempting containers of domestic or foreign manufacture, exported empty and returned as usual containers or coverings of merchandise, or exported filled with products of the United States and returned empty or as the usual containers or coverings of merchandise; Section 308(7), exempting containers for compressed gases, filled or empty, and containers or other articles in use for covering or

---

[3] Wilson Tariff Act, c. 349, par. 88, 28 Stat. 514 (1894). Payne Aldrich Tariff Act, c. 6, par. 151, 36 Stat. 26 (1909). Act of March 3, 1883, c. 121, Section 2502, 22 Stat. 496. Dingley Tariff Act, c. 11, par. 205, 30 Stat. 168 (1897). Underwood Tariff Act, c. 16, par. 324, 38 Stat. 145 (1913).

holding merchandise during transportation and suitable for reuse for that purpose; and Section 311, exempting containers used in packaging goods manufactured in bonded warehouses.   In addition, it is argued that Congress, in Section 308(7), specifically considered the conditions under which containers should be given free entry and, therefore, could not have intended Section 308(1) to allow free entry for containers imported for filling.   From this the Government argues that the legislative intent has always been to assess duties on all containers not expressly excepted, and that to interpret Section 308(1) as an additional exception would nullify the obvious intent of Congress.

█ The argument advanced by the Government finds support in the specific language of Section 308(1) itself which, in our opinion, is the best evidence of Congressional intent.   █ That section does not apply broadly to any and all articles repaired, altered or otherwise changed in condition, but is expressly limited to those articles entering this country which are *to be* repaired, altered or otherwise changed in condition.   That language clearly suggests that Congress intended Section 308(1) to apply only to those articles entered for the purpose of undergoing repairs, alterations or other changes in condition.   Here the purpose of entry was obviously to fill the containers with fertilizer, and clearly not merely to "change their condition."   That, in a literal sense, they were changed in condition cannot be denied, but such changes were wholly incidental to the purpose of their entry.

The judgment is *reversed*.